**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jenessa Dubey,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Concentric Healthcare Solutions LLC and Robert Bales,<br><br>　　　　　Defendants. | No. CV-22-02044-PHX-DJH<br><br>**ORDER** |

Defendants have moved, in limine, to (1) preclude Plaintiff's Exhibit 86 (Doc. 102); (2) preclude her from introducing Mr. Kyle Silk's deposition testimony at trial (Doc. 103); and (3) preclude her from introducing her text message communications with Ms. Stephanie Abbott (Doc. 106). Plaintiff has responded to each of these Motions. (Docs. 107, 108 & 109). The Court will address Defendants' Motions in turn.

**I.    Background**[1]

Plaintiff will proceed to trial on her claims for 1) Failure to Pay Wages against Concentric Healthcare; 2) Sex-Based Discrimination against Concentric Healthcare, 3) Sexual Harassment against all Defendants, 4) Intentional Infliction of Emotional Distress ("IIED") against all Defendants; and 5) Interference in Violation of the FMLA against Concentric Healthcare. (Doc. 94 at 31). Plaintiff's claims involve her work at Concentric from August 2016 through December 2, 2021—the date she was terminated as summarily described below.

---

[1] The Court's Summary Judgment Order more fully describes the background and history of facts involved in Plaintiff's remaining claims. (*See* Doc. 94).

In 2017, Plaintiff was promoted to Account Manager for the Per Diem Nursing division, and in December of 2019, she was promoted to Director of this division. Shortly after her promotion, Plaintiff claims she was sexually assaulted by one of Concentrics's owners, Chris Bollinger, after a company holiday party. Defendants do not deny this.

Around May of 2020, Plaintiff learned that Nate Belcher—the Travel Division Director—referred to her as the "redheaded devil," and stated that someone should kill her and put her out of her misery. Belcher encouraged his team to participate in a game of "a hundred ways to kill the redheaded devil." No action was taken when Plaintiff reported Belcher to Human Resources. Instead, Defendant Bales told Plaintiff to "forget about it."

Defendants also admit that Plaintiff was "routinely segregated from the rest of the company and excluded from normal daily interactions" such as the monthly golf outings where only men were invited or playing fantasy football. Once, Plaintiff attempted to speak with Mr. Silk to voice concerns over a meeting she had with Defendant Bales and Ms. Riley, but "[he] cut Plaintiff off and said, 'why do you have to take everything personally, why are you women so emotional. I'm done with this.' " (citations omitted).

Plaintiff requested and was granted leave under the Family and Medical Leave Act ("FMLA") from November 4 to November 22, 2021. Upon her return, she was bombarded with changes to her program area. Plaintiff attempted to meet with one of her team members but was instead issued a corrective action by Defendant Bales. Defendants admit that this was the first time that Plaintiff was told that she could not meet with her team members one-on-one. The next two days, November 23rd and 24th of 2021, Plaintiff took sick days by texting and calling both Defendant Bales and Ms. Riley. Defendant Bales informed Plaintiff that she did not have any Paid Time Off. Concentric was closed for Thanksgiving and Plaintiff did not show up for work on November 30, December 1, or December 2 and was ultimately terminated.

**II.  Legal Standards – Motions in Limine**

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to

manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n.4 (1984). Motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (citations omitted). Generally, motions in limine that seek exclusion of broad and unspecific categories of evidence are disfavored. *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Motions in limine are "entirely within the discretion of the Court." *Jaynes Corp. v. American Safety Indem. Co.*, 2014 WL 1154180, at *1 (D. Nev. March 20, 2014) (citing *Luce*, 469 U.S. at 41–42). Moreover, "[a] motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has passed." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 (9th Cir. 2013), *aff'd*, 135 S. Ct. 907 (2015) (citing *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 968 (9th Cir. 2001). Motions in limine are "provisional." *Goodman v. Las Vegas Metro. Police Dep't*, 963 F.Supp.2d 1036 (D. Nev. 2013), *aff'd in part, rev'd in part, and dismissed in part on other grounds*, 613 F. App'x 610 (9th Cir. 2015).

Since the Court issues its rulings on the record currently before it, rulings on these motions "are not binding on the trial judge [who] may always change his [or her] mind during the course of a trial." *Id.* (quoting *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (citing *Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner)). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Id.* (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004)).

### A.   Burden of Proof

Motions to exclude evidence require the party seeking exclusion to inform the Court of the evidence's substance with specificity. *See* Fed.R.Evid. 103(a)(2); *United States v. Bradford*, 905 F.3d 497, 505 (7th Cir. 2018) (finding a motion in limine did not satisfy

1  Rule 103(a)'s specificity requirement by failing to identify the specific evidence or explain
2  its admissibility).[2]  The party offering the evidence and testimony at trial bears the burden
3  of proof that it is relevant under Rule 401 and not prejudicial under Rule 403.  Federal Rule
4  of Evidence 401 provides that "[e]vidence is relevant if it has any tendency to make a fact
5  more or less probable than it would be without the evidence and the fact is of consequence
6  in determining the action."  Fed. R. Evid. 401.  Under Rule 402, relevant evidence is
7  admissible unless otherwise provided.  Fed. R. Evid. 402.  However, all relevant evidence
8  is subject to the balancing test set forth by Rule 403.  That is, a court "may exclude relevant
9  evidence if its probative value is substantially outweighed by a danger of one or more of
10 the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,
11 wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

**III.    Defendants' Motions in Limine**

**A.    Motion in Limine No. 1 (Doc. 102) Re: Exhibit 86 (Covid-19 Email)**

Defendant first moves to preclude Plaintiff from introducing Exhibit 86 into evidence; an email written by Concentrics's owner, Kyle Silk, to employees stating his views on Covid-19. (Doc. 102 at 1).  The email, dated June 26, 2020, states:

> Good Afternoon, First, I would like to thank everyone for going to get tested for the flu this morning.
>
> Secondly, it's come to my attention that the usual suspects in the office are complaining aloud (of course) that they had to come back to the office after being tested. I'd like to alert you to the fact that we didn't need to arrange the testing. We thought it would be a considerate thing to do given that most of you haven't been tested. I would also like to extend the invitation to not return until you're fully satisfied that all people are negative and you can safely return feeling warm and cozy inside. Of course[,] you won't be paid for the time you decide to sit it out.
>
> Lastly, if anyone is disgruntled by the way we are choosing to handle our business please know that quitting is an option as well. No hard feelings. We will only choose to work with colleagues that can set the drama and silliness aside and come in and do their jobs like professionals. Everything else is nothing but an unproductive distraction. So, I see this as an

---

[2] Except where otherwise noted, all "Rule" references are to the Federal Rules of Evidence.

>opportunity for some to weed themselves out of the company voluntarily. I look forward to seeing only our colleagues who can set aside the hysterics and pearl clutching next week. Have a great weekend."

(Doc. 102-1 at 2–3).

Defendants assert that this email is irrelevant to any issue in the case and that its probative value is outweighed by the danger of unfair prejudice. (Doc. 102 at 1). Defendants also assert that "the only cause of action [it] is arguably relevant to is Plaintiff's claim for intentional infliction of emotional distress" but that Plaintiff has not alleged that this email to Concentric staff was extreme and outrageous." (*Id.* at 2). Defendants further argue that the email could evoke strong feelings among jurors who lived through Covid-19 and may be angered by the email. (*Id.*)

Plaintiff disagrees asserting that the email, from Concentrics President, Kyle Silk, "is a demonstration of [his] attitude, management and interactions with employees of Concentric, including [Plaintiff] . . . [and] an example of his conduct toward his employees, including his disregard for the health, safety, concern, and well-being of them, including [Plaintiff]. (Doc. 107 at 2). Plaintiff also explains that she had a child with a terminal heart defect so she was concerned about Covid affecting her health and the health of her child when she received the email. (*Id.*) Plaintiff asserts that the email "goes directly to whether Defendants subjected her to a hostile work environment" so it is relevant and supportive of her claim. (*Id.*) The Court agrees.

Plaintiff has asserted a claim for Intentional Infliction of Emotional Distress against all Defendants. The Court previously found that certain instances of conduct, by themselves or in the aggregate, are "beyond all possible bounds of decency" and that Plaintiff demonstrated Defendants either intended to cause Plaintiff emotional distress or recklessly disregarded the near certainty that such distress would result from their individual or combined forms of conduct. (Doc. 94 at 22–23). Mr. Silk's email was directed to all staff, including Plaintiff, and it is probative of the Defendants management style and how Mr. Silk addressed employee concerns during a national health pandemic. Singularly, the email may be of limited probative value of Defendants work environment.

However, together with other instances of conduct and communication, it is relevant to Plaintiff's IIED claim. Therefore, the Court will, at this time, deny the Motion.[3]

Defendants' Motion in Limine No. 1 (Doc. 102) is denied.

**B.     Motion in Limine No. 2 (Doc. 103) Re: Kyle Silk's Deposition Transcript and Video**

Defendants move to preclude Plaintiff from introducing Kyle Silk's deposition testimony related to two prior lawsuits against Concentric. (Doc. 103 at 1). The first lawsuit was filed by Jennifer Quintiliani in 2010 and settled by Concentric for $90,000. (*Id.* at 1–2). The second lawsuit was filed by Kendra Rightsell in 2019 relating to her rights under the FMLA in which a jury rendered a verdict in her favor. (*Id.* at 2). Defendants assert that the testimony is not relevant to Plaintiff's case and that "Federal Rule of Evidence 404 specifically prohibits the admission of other 'wrongs' or [']acts' 'to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.' " (*Id.*) They say that Kyle Silk's "testimony about Quintiliani and Rightsell's allegations, and the determination by the jury that Concentric and Silk violated Rightsell's FMLA rights, suggests that Concentric likely violated Plaintiff's rights in this case" so, the Court should prohibit it. (*Id.*) Defendants also assert that Rule 408 prohibits using settlement offers or agreements to prove the validity of a disputed claim in an unrelated matter and that its probative value is outweighed by undue prejudice. (*Id.* at 3).

Plaintiff counters that "Ms. Dubey is not introducing the evidence for the settlement amounts or the jury findings of violations of the FMLA to establish her claims here. She is introducing this evidence to demonstrate Mr. Silk's and Concentrics's willful disregard for its legal obligations." (Doc. 108 at 3). Plaintiff also asserts that her claim for failure to pay wages permits discretion of an award of treble damages upon a finding of a lack of good faith by the Defendants. (*Id.*) So, as Plaintiff argues, the testimony of Concentrics'

---

[3] The Court notes the Parties different version about whether or how Exhibit 86 came to light. At the Final Pretrial Conference the Parties should be prepared to inform the Court precisely how and when Exhibit 86 was disclosed.

- 6 -

"cavalier attitude" towards complying with the law is directly relevant to a finding of bad faith. (*Id.*) Plaintiff proffers the following excerpt as relevant to her claims:

> Q: Do you know why you and Concentric were found liable for having violated FMLA?
>
> A: Because the jury made the – came to the wrong verdict.
>
> Q: Why did the jury come to the wrong verdict?
>
> A: Well, because in my opinion, the companies are at a disadvantage when an employee brings a plan.
>
> Q: Do you think that you or Concentric did anything wrong with regards to Ms. Rightsell?
>
> A: Absolutely not.
>
> Q: Have you made any changes in Concentric since losing the jury verdict.
>
> A: No.
>
> Q: Were there allegations in that lawsuit that Concentric employees had destroyed evidence?
>
> A: No[t] that I'm aware of.
>
> Q: Were you aware that there were allegations that Concentric employees had destroyed notebooks containing information relating to Ms. Rightsell?
>
> A: No. I mean, allegations are meaningless to me. I don't give them much credence. Anyone can allege anything.

(Doc. 108 at 3-4).

As an initial matter, the deposition testimony alleges that Concentric spoliated evidence. The Court is not aware that in the present case, any Defendant is alleged to have done so. Since there are no allegations of spoliation, the testimony regarding those allegations in *Rightsell* are likely irrelevant under Rule 401. Therefore, references to spoliation are inadmissible.

The standard for relevance under Rule 401 is liberal. *United States v. Velazquez*, 125 F.4th 1290, 1295 (9th Cir. 2025). Plaintiff believes that the testimony about the settlement and the lack of changes after the jury verdict demonstrate Concentrics's "willful disregard for its legal obligations." (Doc. 108 at 3). She also offers that the lack of changes

1  after the jury verdict relates to showing a lack of good faith to permit an award of treble
2  damages for Plaintiff's claim for a failure to pay wages. (*Id.*)  Mr. Silk's awareness of
3  these cases, which are akin to Plaintiff's allegations, is sufficient to establish relevance.
4  Fed. R. Evid. 401.  They are probative of Mr. Silk's refusal to state whether he would make
5  changes to the Defendants' conduct in the event of an adverse verdict.  *See Velazquez*, 125
6  F.4th at 1295.

### 1. Rule 404

Defendants also rely on Rule 404 to argue for precluding evidence of the settlement and jury verdict. (Doc. 103 at 2–3).  This Rule prohibits the use of evidence of "any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character." Fed. R. Evid. 404.  However, the evidence may be admissible if used for another purpose, such as demonstrating "motive, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.*  A district court has wide discretion if the evidence is offered for a proper purpose. *United States v. Johnson*, 132 F.3d 1279, 1282 (9th Cir. 1997).

Courts consider the following factors to analyze evidence for admission under Rule 404(b): "(1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged." *United States v. Verduzco*, 373 F.3d 1022, 1027 (9th Cir. 2004).  If evidence is relevant to a permitted purpose under Rule 404(b), "the district court should admit the evidence unless its prejudicial impact substantially outweighs its probative value." *Johnson*, 132 F.3d at 1282.  In some circumstances, a limiting instruction can cure any such prejudicial effect. *United States v. Hadley*, 918 F.2d 848, 852 (9th Cir. 1990).

Mr. Silk's testimony regarding *Rightsell* falls under at least one of the exceptions to Rule 404(b): the absence of mistake exception. *See* Fed. R. Evid. 404(b).  This testimony is probative of Defendants notice of violations followed by a willful failure to meet its legal obligations. *See Munger v. Cascade Steel Rolling Mills, Inc.*, 544 F. Supp. 3d 1078, 1091

(D. Or. 2021) (stating that one of the elements of an FMLA claim is that the employer denied the employee FMLA benefits to which he was entitled). Both the settlement and the jury verdict are relevant and go to a material point: Defendants' disregard for their legal obligations and a lack of good faith. *See Johnson*, 132 F.3d at 1282; *Verduzco*, 373 F.3d at 1027. Neither are too remote in time: the settlement was approved in December 2017, *see Quintiliani v. Concentric Healthcare Solutions, LLC*, 2:10-cv-01363-SMM, ECF No. 154 (D. Ariz. Dec. 18, 2017), and the jury verdict was entered in July 2023, *see Rightsell v. Concentric Healthcare Solutions LLC*, 2:19-cv-04713-GMS, ECF No. 163 (D. Ariz. July 14, 2023). Concentric had a settlement with Ms. Quintiliani and received an adverse jury verdict in the *Rightsell* case. (*See* Doc. 103 at 1–2). Thus, the testimony is admissible under Rule 404(b) to show an absence of mistake. *See Johnson*, 132 F.3d at 1282; Fed. R. Evid. 404(b)(2). Furthermore, any potential prejudicial impact of this testimony can be addressed a limiting instruction. *See Hadley*, 918 F.2d at 852.

### 2. Rule 408

Defendants argue that Rule 408 prohibits the use of Mr. Silk's testimony that Concentric paid Ms. Quintiliani $90,000 in a settlement. (Doc. 103 at 3). Rule 408 prohibits the use of settlement offers or negotiations to prove the validity of a claim, but such evidence may be offered "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408. There are two main policy justifications for Rule 408: first, an offer of settlement may not reflect any weakness of position; and second, public policy favors settlement of disputes. *Zucchella v. Olympusat, Inc.*, 2023 WL 2633947, at *11 (C.D. Cal. Jan. 10, 2023) (citing *Hudspeth v. Comm'r of Internal Revenue Serv.*, 914 F.2d 1207, 1213–14 (9th Cir. 1990)). Rule 408 applies "where the party seeking to introduce evidence of a settlement was not a party to the original settlement." *Id*.

Mr. Silk's testimony regarding the settlement is permissible only if it is offered for a purpose other than to prove or disprove the validity of a claim. Fed. R. Evid. 408. Here,

Plaintiff intends to offer this evidence to show Defendants' disregard for their legal obligations and their lack of good faith. (Doc. 108 at 3). Both uses relate to elements of her claims, not to show another purpose such as proving a witness's bias or prejudice. Moreover, both policy justifications of Rule 408 are implicated here—the settlement is not proof of Defendants' wrongdoing, and using settlement offers to prove the validity of claims discourages the settlement of disputes. *See Zucchella*, 2023 WL 2633947, at *11. Therefore, Mr. Silk's testimony about settling Ms. Quintiliani's claims for $90,000 is inadmissible under Rule 408. *See id.* Moreover, jury confusion over the use of the settlement testimony may lead to undue prejudice. That is, a jury may be confused given that Plaintiff intends to use the settlement to prove her claim. Fed. R. Evid. 408(a).

In sum, the Court will deny the Defendants' Motion in Limine No. 2 (Doc. 103) as it relates to Mr. Silk's testimony about the *Rightsell* jury verdict and Concentrics conduct thereafter. It will grant the Defendants' Motion as it relates to spoliation of evidence and the *Quintiliani* settlement.

### C. Motion in Limine No. 3 (Doc. 106) Re: Text Messages Between Plaintiff and Stephanie Abbott

Defendants finally ask the Court to preclude Plaintiff from introducing her text messages with Stephanie Abbott, a friend and former Concentric employee "because they are classic hearsay[.]" (Doc. 106 at 1). Plaintiff acknowledges that they are hearsay but argues that they fall under the exceptions of Present Sense Impression, Rule 803(1), and Then Existing Mental, Emotional and Physical Condition, Rule 803(3). (Doc. 109 at 2).

Defendants provide over 100 pages that include a variety of text messages, photographs and assorted communications from Plaintiff to others in Concentric. On its review, the Court notes that the proffered exhibits include communications not only with Ms. Abbott, but from Plaintiff to Erika Shapiro. The Court will not issue a ruling as to each of these pages. The Court will direct Plaintiff to adhere to the Federal Rules of Evidence and Procedure and establish proper foundation for each exhibit (and text contained therein) it intends to introduce into evidence (Doc. 106; Docs. 106-1–106-9). Each exhibit must be relevant to one of the remaining claims and admissible under one of

1    the exceptions to the prohibition against admitting hearsay evidence.  *See* Rules 803(1)–
2    (5).  Accordingly, at this time, the Court will not preclude text messages from Plaintiff.
3        Defendants' Motion in Limine No. 3 (Doc. 106) is denied.
4        Accordingly,
5        **IT IS ORDERED** that Defendants' Motions in Limine No. 1 (Doc. 102) and No. 3
6    (Doc. 106) are **DENIED**.
7        **IT IS FURTHER ORDERED** Defendants' Motion in Limine No. 2 (Doc. 103) is
8    **GRANTED in part** and **DENIED in part**, as set forth in this Order.
9        Dated this 13th day of June, 2025.

Honorable Diane J. Humetewa
United States District Judge